IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DEPARTMENT OF EDUCATION,    )    CIVIL NO. 12-00475 LEK-BMK
STATE OF HAWAII,           )
                          )
        Plaintiffs,     )
                          )
    vs.                )
                          )
S.C., by and through his   )
Father, DOUG C.,         )
                          )
        Defendants.     )
_____ )

**ORDER AFFIRMING IN PART, REVERSING IN PART, AND
MODIFYING THE HEARINGS OFFICER'S JULY 23, 2012 DECISION**

Before the Court is Plaintiff Department of Education, State of Hawaii's ("DOE" or "Plaintiff") appeal from the Administrative Hearings Officer's ("Hearings Officer") July 23, 2012 Findings of Fact, Conclusions of Law and Decision ("Decision"[1]), pursuant to the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 et seq. The DOE filed its opening brief on January 7, 2013. Defendants S.C. ("Student") by and through his father, Doug C. ("Parent"), filed their answering brief on February 7, 2013. The DOE filed its reply brief on February 14, 2013. This appeal came on for hearing on March 4, 2013. Appearing on behalf of Plaintiff was

_____

[1] The Decision is Exhibit 12 to the Administrative Record on Appeal ("ROA"), at 87-105; the Hearings Officer's Order Denying Respondent's Motion for Reconsideration of the Decision is Exhibit 16 to the ROA, at 139-143.

Michelle Puu, Esq., and appearing on behalf of Defendants was Keith Peck, Esq.   After careful consideration of the supporting and opposing memoranda, and the arguments of counsel, the July 23, 2012 Decision is HEREBY AFFIRMED IN PART AND REVERSED IN PART.   The Decision is AFFIRMED with respect to the finding of a denial of a Free Appropriate Education ("FAPE"), and REVERSED with respect to the award of full reimbursement for Student's private placement from the period from November 4, 2011 to November 4, 2012.

I.   **Factual and Administrative Background**

Student is eighteen years old and a student at Horizons Academy ("Horizons"), a private school on Maui.   Student is eligible for special education and related services under the IDEA in the category of autism.   Student's home school is Maui High School ("MHS").   At the time in question, Student was reading at a 3rd to 6th grade level, but could do some high school level math, and attended a pre-algebra class at Maui Community College ("MCC") in the fall of 2011.   [Decision at 3-5.]

The DOE developed Student's November 4, 2011 Individualized Education Program ("IEP") at meetings on October 28, 2011 and November 4, 2011.   The IEP offered Student placement as follows:

> (Student) will not participate with non-disabled peers or receive his education with the general

2

> education population.  (Student) will participate
> with his non-disabled peers in activities of his
> own choosing including morning recess, lunch,
> lunch recess, school assemblies, and other
> extra-curricular activities of his own choosing
> and interest.

[Id. at 5.]  Under the IEP, Student would receive educational and related services at Maui High School's Workplace Readiness Program, in a self-contained classroom.  The Workplace Readiness Program is:

> for juniors, seniors, and continuing education
> students (ages 18-20) who are on a certificate of
> completion (not a diploma) track.  The Workplace
> Readiness Program attempts to get students as life
> ready as possible, working on daily living and
> employment skills such as laundering, personal
> hygiene, budgeting, self-advocacy, and safety
> skills.

[Id. at 3.]  At the IEP meetings, Parent told the IEP team that he wanted Student to remain at Horizons, but did not voice any specific concerns with the content of the IEP.  Parent did not ask that Student be placed in a general education setting at the IEP meetings.  [Id. at 4-7.]

On January 9, 2012, Defendants filed their Request for Impartial Hearing ("RIH") with the DOE.  [ROA at 4-7.]  The RIH asserts that the November 4, 2011 IEP denied Student a FAPE because:

> • The designation of Student's placement is not
>   the least restrictive environment ("LRE") for
>   Student;
>
> • The designation of Student's placement was
>   not individualized for Student; and

3

- The designation of Student's placement is insufficient to determine its meaning.

[Id. at 8.]

The Hearings Officer convened the due process hearing on June 13, 2012, and the parties filed written closing arguments. [Id. at 1.]

The Hearings Officer framed the issues as whether Student was placed in the least restrictive environment; whether his placement was individualized and sufficiently defined; and the appropriateness of Plaintiff's placement at Horizons. With respect to LRE, the Hearings Officer found that the DOE did not consider placing Student in a general education class for math or whether Student's goals and objections could be implemented partly in general education classes. [Id. at 10-11.]

The Hearings Officer concluded that, with supports, "Student would obtain educational benefits from a math regular education classroom. Further, Student has socialization needs. The non-academic benefits of interaction with non-disable peers in a regular education classroom would be to provide Student with role models and socialization opportunities with general education peers." [Id. at 11.] The Hearings Officer concluded that the DOE failed to place Student in the least restrictive environment. [Id. at 12.]

The Hearings Officer also concluded that the IEP's placement was not individualized to his needs.  He decided that the term "to participate with his non-disabled peers in activities of his choosing" was insufficient to describe the socialization opportunities with non-disabled peers that Student would have.  [Id. at 15.]  He also held that Horizons was an appropriate placement for Student, and based on the DOE's denial of FAPE, awarded Defendants the cost of reimbursement for education and related services for November 4, 2011 through November 4, 2012.  [Id. at 16.]  The DOE appealed the Decision on August 22, 2012.  The DOE also filed a Motion for Reconsideration on July 31, 2012, which the Hearings Officer denied on September 6, 2012.

## II.  Plaintiff's Opening Brief

The DOE urges the Court to reverse the Hearings Officer's Decision that it denied Student a FAPE on the grounds that it lacks evidentiary support and contradicts the same Hearings Officer's previous decision involving the same parties.  It characterizes Parent's participation during the IEP process as "withholding his complaints with the [offer of FAPE] until he testifies in the Administrative Hearing.  This tactic thwarts the DOE's ability to address Parent's concerns short of a Due Process Hearing."  [Opening Br. at 2.]

According to the DOE, this same Hearings Officer found for the DOE with respect to Student's November 2010 IEP in a June 14, 2011 decision, which contained the exact same placement language that the Hearings Officer found problematic in the instant case.  That previous June 14, 2011 decision was affirmed on appeal to this district court.  The DOE states that the earlier decision terminated Student's Stay Put status at Horizons on December 12, 2011, and that Student's continued placement thereafter was unilaterally determined by Parent.  [Id. at 4, 6 n.1 (citing ROA Exh. 13 (10/10 IEP), and Exh. 16 (6/14/11 Decision); Doug C. v. Dep't of Educ., Civil No. 11-00441 KSC (D. Hawai`i 2012)).]

Here, the DOE argues that the Hearings Officer erred when he made the following factual findings and conclusions because: (1) Student's IEP team was not perplexed as to whether Student belonged on a Diploma or Certificate track; and (2) Student demonstrated a clear ability to make choices as to which activities Student would participate in with non-disabled peers.  It also argues that Student's IEP placement language was legally sufficient and appropriately individualized for Student's unique needs and that placement in the Workplace Readiness Program at MHS constituted placement in Student's least restrictive environment.

Finally, the DOE argues that, assuming there was a denial of FAPE, reimbursement should be denied under the IDEA's exceptions to reimbursement, pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii), 34 C.F.R. § 300.148.  [Id. at 33-35.]

## III. **Defendants' Answering Brief**

Defendants note in their Answering Brief that the prior June 14, 2011 decision did not address LRE; rather, the issue in that case was whether holding the IEP meeting without Parent present violated the IDEA.  They state that they have appealed the district court's order affirming that decision.  [Answering Br. at 3.]  Defendants argue that the Hearings Officer supported his conclusions with appropriate findings of fact, including evidence going to Student's need for socialization and ability to integrate in a general education elective class.  They assert that leaving the choice up to Student of when and whether to participate in activities with non-disabled peers was never addressed at the IEP meeting.  [Id. at 8-10.]

With respect to Parent's desire to maintain Student's placement at Horizons, Defendants argue that Parent "sought to end the litigation between the parties and to honestly state his own discomfort with the posturing that had encompassed the IEP process. . . .  [I]t is no wonder that [Parent] sought to speak to the reality of the situation by requesting the team to consider placing his son at Horizons Academy."  [Id. at 14-15.]

7

IV.  **Plaintiff's Reply Brief**

In its reply, the DOE emphasizes that, even if a
procedural violation is found, the IEP was reasonably calculated
to confer educational benefits.  It notes that, at the time of
the IEP's development, Student had been attending MCC for several
weeks with the assistance of two adults.  It argues that Student
was not obtaining any functional math skills in the community
college class, and that Student would have no practical use for
algebra.  Rather, Student had basic math needs, such as:
navigation of Student's environment with time constraints in
mind, the balancing of a checkbook, and learning how to develop a
budget.  The DOE argues that placement in the MHS Workplace
Readiness Program was appropriate for Student's needs based on
the evidence before the Hearings Officer.  [Reply at 2-4.]

With respect to the previous year's IEP, the DOE notes
that the Hearings Officer previously decided that the DOE's
placement was appropriate and that Defendants did not challenge
that finding on appeal.  It argues that it had no reason to
believe that its placement language was improper because it "bore
the specific endorsement of the administrative hearings officer
and essentially assenting silence from Parent." [Id. at 5.]  The
DOE contends that Parent failed to raise either of the issues
complained of now until he testified at the administrative

hearing because he never requested that the team consider placement of Student in a general education classroom, and never questioned the placement language that permitted Student to choose the activities that he would participate in with non-disabled peers.  [Id. at 6.]

## STANDARDS

### I.  IDEA Overview

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  Hoeft ex rel. Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310, 108 S. Ct. 592, 597, 98 L. Ed. 2d 686 (1988)).  It ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).

The IDEA defines FAPE as

special education and related services that –

>     (A) have been provided at public expense, under public supervision and direction, and without charge;
>     (B) meet the standards of the State educational agency;
>     (C) include an appropriate preschool,

9

> elementary school, or secondary school
> education in the State involved; and
> (D) are provided in conformity with the
> individualized education program required
> under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the

IDEA, a state educational agency receiving federal funds must

evaluate a student, determine whether that student is eligible

for special education, and formulate and implement an IEP.  See

generally 20 U.S.C. § 1414.  The IEP is to be developed by an

"IEP Team" composed of, *inter alia*, school officials, parents,

teachers and other persons knowledgeable about the child.  20

U.S.C. § 1414(d)(1)(B).

    "Procedural flaws in the IEP process do not always

amount to the denial of a FAPE."  L.M. v. Capistrano Unified Sch.

Dist., 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted).

Once a procedural violation of the IDEA is identified, the court

"must determine whether that violation affected the substantive

rights of the parent or child."  Id. (citations omitted).

"[P]rocedural inadequacies that result in the loss of educational

opportunity, or seriously infringe the parents' opportunity to

participate in the IEP formulation process, clearly result in the

denial of a FAPE."  Id. (alteration in original) (citations and

quotation marks omitted).

    Compliance with the IDEA does not require school

districts to provide the "absolutely best" or "potential-

maximizing" education.  <u>J.W. v. Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted).  Rather, school districts are required to provide only a "'basic floor of opportunity.'"  <u>Id.</u> (quoting <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 201 (1982)).  The FAPE need only be "appropriately designed and implemented so as to convey [the] [s]tudent with a meaningful benefit."  <u>Id.</u> at 433 (citations and quotation marks omitted).

If a parent disagrees with the contents of an IEP, the parent may challenge the contents thereof by demanding an administrative due process hearing to be conducted by the local or state educational agency.  <u>See</u> 20 U.S.C. § 1415(b)(6), (f)(1)(A).  Parents may also send their student to a private program and seek retroactive tuition reimbursement from the state.  <u>See</u> <u>Forest Grove Sch. Dist. v. T.A.</u>, 129 S. Ct. 2484, 2493, 2496 (2009) (citations omitted).  Where parents unilaterally withdraw a child from public school, they "do so at their own financial risk."  <u>Id.</u> at 2496 (citations and internal quotation marks omitted).  Parents challenging an IEP are entitled to reimbursement only if "a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act."  <u>Id.</u> (citations and internal quotation marks omitted); <u>see also</u> 34 C.F.R. § 300.148(c).

## II.  <u>Standard of Review</u>

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the
> court –
>> (i) shall receive the records of the
>> administrative proceedings;
>> (ii) shall hear additional evidence at the
>> request of a party; and
>> (iii) basing its decision on the
>> preponderance of the evidence, shall grant
>> such relief as the court determines is
>> appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings.  <u>L.M. v. Capistrano Unified Sch. Dist.</u>, 556 F.3d 900, 908 (9th Cir. 2009) (quoting <u>Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)) (some citations omitted).  The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling.  <u>J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 438 (9th Cir. 2010) (citing <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987)).  In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'"  <u>L.M. v. Capistrano</u>, 556 F.3d at 908 (quoting <u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d

884, 892 (9th Cir. 1995)).  The district court should give

"substantial weight" to the hearings officer's decision when the

decision "evinces his careful, impartial consideration of all the

evidence and demonstrates his sensitivity to the complexity of

the issues presented." <u>Cnty. of San Diego v. Cal. Special Educ.</u>

<u>Hearing Office</u>, 93 F.3d 1458, 1466-67 (9th Cir. 1996) (citation

and quotation marks omitted).  Such deference is appropriate

because "if the district court tried the case anew, the work of

the hearing officer would not receive 'due weight,' and would be

largely wasted." <u>Wartenberg</u>, 59 F.3d at 891.  "[T]he ultimate

determination of whether an IEP was appropriate," however, "is

reviewed <u>de novo</u>." <u>A.M. ex rel. Marshall v. Monrovia Unified</u>

<u>Sch. Dist.</u>, 627 F.3d 773, 778 (9th Cir. 2010) (citing <u>Wartenberg</u>,

59 F.3d at 891).

 A court's inquiry in reviewing IDEA administrative

decisions is twofold:

> "First, has the State complied with the procedures
> set forth in the Act?  And second, is the
> individualized educational program developed
> through the Act's procedures reasonably calculated
> to enable the child to receive educational
> benefits?"  [<u>Rowley</u>, 458 U.S. at 206-07]
> (footnotes omitted).  "If these requirements are
> met, the State has complied with the obligations
> imposed by Congress and the courts can require no
> more." <u>Id.</u> at 207.

<u>J.L. v. Mercer Island Sch. Dist.</u>, 592 F.3d 938, 947 (9th Cir.

2010) (some citations omitted).

13

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling.  Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted).  The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed.  J.W., 626 F.3d at 438 (citation omitted).

## DISCUSSION

### I.  Denial of FAPE

The Court first notes that the Decision is thorough, careful, and well-reasoned.  The findings are supported by appropriate evidence, and the conclusions demonstrate consideration of all the evidence and the Hearings Officer's sensitivity to the complexity of the issues presented.  Where a decision contains some findings that are "thorough and careful," and others that are not, the court can give deference to the thorough and careful findings and yet review other findings independently.  See R.B., ex rel. F.B. v. Napa Valley Unified School Dist., 496 F.3d 932, 943 (9th Cir. 2007) ("[W]e accord particular deference to the [hearings officer's] 'thorough and careful' findings . . . although we independently review the testimony in the record that [he] failed to consider.").  Accordingly, the Court gives "substantial weight" to the Hearings Officer's Decision.  See Cnty. of San Diego,, 93 F.3d at 1466-67.

The DOE argues that the Hearings Officer erred when he concluded that the November 14, 2011 IEP denied Student a FAPE. The Decision, however, recites the appropriate legal standards and applies them reasonably to the facts of this case.  First, the Court notes that the DOE relies on the same Hearings Officer's prior determination of the appropriateness of the offered placement.  The Court agrees that the previous determination is a reasonable starting point for the DOE's development of the IEP at issue in this case, but that it is not dispositive.  From year to year, a student's educational needs likely shift and require reevaluation.  Moreover, the DOE does not argue that the prior decision has any legally preclusive effect here.  Based on the totality of the circumstances and the nature of the IEP process, the Court does not find that the Hearings Officer's Decision should be reversed based on the earlier decision.

Next, the Court addresses the conclusion that the IEP failed to consider the LRE.  The DOE does not dispute that under the LRE provisions, it must ensure that, to the extent possible, students with disabilities be educated with students who are non-disabled.  Specifically, the IDEA provides:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate

15

> schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.
>
> 20 U.S.C. § 1412(a)(5)(A). . . . "[E]ven in cases in which mainstreaming is not a feasible alternative, [however] the statutory preference for a least restrictive placement applies." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 132 (2d Cir. 1998) (internal quotations omitted).

Aaron P. v. Haw., Dep't of Educ., --- F. Supp. 2d ----, 2012 WL 4321715, at *15 (D. Hawai'i Sept. 17, 2012); see also Haw. Admin. R. §§ 8-60-15, 8-60-18.  A court may evaluate and balance the following factors to determine whether mainstreaming is appropriate: "(1) the educational benefits of full-time placement in the regular classroom; (2) the non-academic benefits of such placement; (3) the effect the disabled child has on the teacher and children in the regular class; and (4) the costs of mainstreaming the child."  Sacramento City Unified Sch. Dist. v. Rachel H., 14 F.3d 1398, 1404 (9th Cir. 1994).

The Court observes that there is some dispute whether Student gained sufficient educational benefit from attending math classes at MCC, as compared to the math skills he could develop in the MHS Work Readiness Program.  The Court, however, commends the DOE personnel's concerns with Student's ability to navigate in the larger world upon completion of school.  There is also

room for dispute regarding the best way to address Student's
socialization needs, and whether he would choose to interact with
non-disabled peers in a general education setting.  In any event,
the Hearings Officer found that the DOE "did not even consider
placing Student in a general education class for math[,]" or
"whether Student's goals and objectives could be implemented
partly in a special education and partly in regular education
classes."  [Decision at 11.]  Tellingly, the DOE argues that the
lack of discussion of a general education placement constitutes
at most a procedural violation which falls short of a denial of
FAPE.  The Court agrees with the Hearings Officer that this
constitutes a procedural violation under IDEA, and finds that the
DOE has not met its burden on appeal of establishing that it
offered Student a FAPE.  As noted, there is room for dispute
regarding the benefits of placing Student in the Workplace
Readiness Program, but Student also demonstrated socialization
needs.  On balance, the Court cannot say that the Hearings
Officer erred in concluding that the DOE failed to place Student
in the least restrictive environment.

     The DOE also argues that the IEP placement language was
legally sufficient and appropriately individualized for Student's
unique needs, contrary to the Hearings Officer's conclusion.  The
IEP states that Student "will participate with his non-disabled
peers in activities of his own choosing including morning recess,

lunch, lunch recess, school assemblies, and other
extra-curricular activities of his own choosing and interest."
[Id. at 12.]  The Hearings Officer credited Parent's testimony
that "Student would not choose lunch with his regular education
peers[,]" and that "due to his disability, Student would not
choose to interact." [Id.]  The Hearings Officer then concluded
that the placement language "'to participate with his nondisabled
peers in activities of his own choosing' leaves it up to Student
to determine his level of socialization with non-disabled peers.
This is not a specific enough offer to address Student's
socialization needs." [Id. at 13.]  The Court affords the
Hearings Officer appropriate deference in this finding.  He
identified the Student's unique needs, including the need for
socialization, and concluded that the IEP did not sufficiently
address this need in light of evidence that the Student would
likely choose not to interact with others at morning recess,
lunch, lunch recess, school assemblies, and other
extra-curricular activities.  The Hearings Officer's conclusion
is reasonable and consistent with the evidence that portions of
the placement designation were not sufficiently individualized.

          In sum, the Court HEREBY AFFIRMS the Decision with
respect to its conclusions that, "through the November 4, 2011
IEP, the DOE failed to place Student in the LRE.  Further,
Petitioners have shown the designation of Student's placement in

the November 4, 2011 IEP was insufficient to determine its meaning and was not individualized for Student." [Id. at 16.]

## II.   Award of Reimbursement for Private Placement

The DOE alternatively argues that, assuming there was a denial of FAPE, reimbursement should be denied pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii), and 34 C.F.R. § 300.148. Reimbursement is an equitable remedy and is not awarded automatically in cases where FAPE has not been offered.  "The cost of reimbursement . . . may be reduced or denied . . . upon a judicial finding of unreasonableness with respect to actions taken by the parents."  20 U.S.C. § 1412(a)(10)(C)(iii)(III). The Ninth Circuit recently explained the factors courts should consider when weighing reimbursement for private placement:

> The IDEA permits a district court to "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  We have held that "[p]arents have an equitable right to reimbursement for the cost of providing an appropriate education when a school district has failed to offer a child a FAPE."  W.G. [v. Bd. of Trustees of Target Range School Dist. No. 23, 960 F.2d 1479,] 1485 [(9th Cir. 1992)].  Even if a parent prevails on an IDEA claim, however, reimbursement is not automatic and the Supreme Court has repeatedly cautioned that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk."  Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 373–74, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985).  The Court has further explained that reimbursement for such expenses is appropriate only if (1) the school district's placement violated the IDEA, and (2) the alternative

placement was proper under the statute.  <u>Florence</u>
<u>Cnty. Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 15,
114 S. Ct. 361, 126 L. Ed. 2d 284 (1993).  "If
both criteria are satisfied, the district court
then must exercise its 'broad discretion' and
weigh 'equitable considerations' to determine
whether and how much, reimbursement is
appropriate."  <u>C.B. [ex rel. Baquerizo v. Garden</u>
<u>Grove Unified Sch. Dist.</u>, 635 F.3d 1155,] 1159
[(9th Cir. 2011)].  In making this determination,
the district court may consider all relevant
equitable factors, including, inter alia, notice
to the school district before initiating the
alternative placement; the existence of other,
more suitable placements; the parents' efforts in
securing the alternative placement; and the level
of cooperation by the school district.  <u>Forest</u>
<u>Grove Sch. Dist. v. T.A.</u>, 523 F.3d 1078, 1088–89
(9th Cir. 2008).  These factors make clear that
"[t]he conduct of *both* parties must be reviewed to
determine whether relief is appropriate."  <u>W.G.</u>,
960 F.2d at 1486 (emphasis added).

<u>Anchorage School Dist. v. M.P.</u>, 689 F.3d 1047, 1058-59 (9th Cir.

2012).  In the instant case, the Court upholds the Hearings

Officer's finding that the DOE denied Student a FAPE, and the DOE

does not challenge the appropriateness of Student's private

placement on appeal.  It appears that both of the <u>Carter</u> factors

are met.

Next, the Court considers equitable factors and

concludes that Parent's conduct was unreasonable and tainted what

should be a collaborative IEP process.  The evidence demonstrates

that, during the IEP process, Parent failed to express relevant

concerns with the DOE's IEP, but raised specific issues for the

first time during the administrative hearing below.  That is,

Parent never requested that Student be placed in a general rather

than special education setting.   Moreover, Parent never raised

his later concerns regarding which activities Student would

choose to participate in with non-disabled peers.   In fact, it

appears that Parent's sole concern was that the DOE place Student

at Horizons.   He testified as follows at the due process hearing:

> Q.   And did you raise this to the IEP team that
> this was your preference that he be in a general
> ed classroom environment?
> A.   I told them that we wanted him to be at
> Horizons.
>    . . . .
> Q.   Let me ask it a different way . . . .   Did
> you ever tell the IEP team, I don't like the idea
> of a fully self-contained classroom.   I prefer
> [Student] to be in a general education type
> classroom?
> A.   Well, in a sense.   I told them I'd rather he
> stayed at Horizons.
> Q.   Okay.   So [your] answer to my question is no,
> you didn't tell them that?
> A.   Well, I told them I wanted him to stay at
> Horizons.

[ROA, Tr. Vol. I, at 87-88.]   The IEP team understood Parent's

position as follows:

> he was going to file for Stay Put, so he's going
> to be [at Horizons].   By the time everything got
> settled, [Student] would have aged out and they
> would have -- he would have gotten, for lack of --
> I mean, he would have gotten - [Student] would be
> at Horizons all -- all during that time, then, so
> rather than going through the formality of doing
> an annual IEP, why don't we just make the decision
> to have him at Horizons regardless of whether, you
> know, there were other possibilities.

[ROA, Tr. Vol. II, at 172.]

It appears that Parent predetermined his disapproval of

any placement other than Horizons, but did not raise any other

concerns with the DOE's offered placement at all during the development of the IEP.  As best the Court can tell, he sprung his specific concerns on the DOE for the first time during the due process hearing, at which point the IEP team could not address those concerns.  In this Court's view, such conduct was unreasonable and contrary to the collaborative spirit of the IDEA, and undermined the process.  "Such Boulwarism, whether or not well-intentioned, constitutes an unreasonable approach to the collaborative process envisioned by the IDEA.  Here, that attitude sufficed to undermine the process."  C.G. ex rel. A.S. v. Five Town Community School Dist., 513 F.3d 279, 288 (1st Cir. 2008) (citation omitted); see also Schoenbach v. Dist. of Columbia, 309 F. Supp. 2d 71, 89 (D.D.C. 2004) ("Such [parental] silence, despite their genuine conviction that [student] needed to be in private school, is inexplicable and unreasonable.  The court concludes that the Initial IEP proposed an inappropriate public school placement in significant part because of the failure of [student's] parents to object to the IEP when given the opportunity to do so.  Therefore, plaintiffs are not entitled to tuition reimbursement.").

      This Court has previously recognized that the system functions best when parents and the school district cooperate in the development of an IEP, and that both parties have obligations under the IDEA.  See Rachel L. v. Hawaii, Dept. of Educ., Civil

No. 11-00756 LEK-BMK, 2012 WL 4472263, at *15 (D. Hawai'i Sept. 25, 2012) ("The DOE has an obligation to schedule an annual IEP review and, while parental participation is a critical component of an IEP meeting, the DOE's requirement to secure parental participation has to be met with reasonable efforts."); see also Greenland Sch. Dist. v. Amy N., 358 F.3d 150, 159 (1st Cir. 2004) ("[R]eimbursement for private school tuition depended on the parents cooperating with school authorities in determining the proper placement and educational plan for the child.")

Although the Court is upholding the finding that the DOE failed to offer a FAPE, the Court observes that the DOE appears to have made a good-faith effort to provide Student with a timely, comprehensive IEP in light of Parent's failure to provide any feedback other than his insistence on placement at Horizons.  The Court, in its discretion, will reduce by fifty percent the Hearings Officer's award based on the unreasonable conduct.  The Court finds that this reduction balances the finding that the DOE did not meet its obligations under the IDEA with that Parent's conduct that undermined the process by withholding his objections to the proposed placement until the due process hearing, rather than during the development of the IEP.  This reduction recognizes that neither party fulfilled its obligations under the IDEA.  The Court HEREBY REVERSES the Decision to the extent it awarded Defendants full reimbursement

23

for the period in question.[2]   The Court HEREBY MODIFIES the award

as follows: Student is awarded one half of

> the cost of reimbursement for educational and
> related services for Student's program and
> placement at the current private school
> [Horizons], including, but not limited to,
> tuition, speech therapy, skills training,
> behavioral consultation and oversight,
> transportation, after-school programs, and other
> instructional and related expenses associated with
> Student's private program.  [Defendants] are
> awarded this reimbursement for the period of time
> that the November 4, 2011 IEP is in effect; that
> is, from November 4, 2011 to November 4, 2012.

[Decision at 16.]

## CONCLUSION

On the basis of the foregoing, the Hearings Officer's

July 23, 2012 Findings of Fact, Conclusions of Law and Decision

is HEREBY AFFIRMED IN PART with respect to the finding of a

denial of FAPE.  The Decision is REVERSED IN PART with respect to

an award of full tuition reimbursement.  The Court MODIFIES the

award to one half of the award provided in the Decision, as set

forth above.

IT IS SO ORDERED.

---

[2] The Court is mindful of DOE counsel's representation at
the March 4, 2013 hearing that the DOE does not seek to have
money returned once it has been paid to providers.

DATED AT HONOLULU, HAWAII, March 28, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DOE V. S.C., ETC.; CIVIL NO. 12-00475 LEK-BMK; ORDER AFFIRMING IN PART, REVERSING IN PART, AND MODIFYING THE HEARING OFFICER'S JULY 23, 2012 DECISION